Daniels, J.
The damages which the plaintiff claimed to • recover were for his malicious prosecution and arrest at the instance of one of the defendants, and with the assent and approval of the other. He was first arested for an assault and battery, and after being detained in the custody of the officer for a time, was, apon the hearing before the justice, discharged upon the payment of $3.50, costs of the arrest. On the second occasion he was arrested for no assignable ■ offense, and after being detained in custody under that arrest, was again discharged. Upon a third occasion he was arrested upon a warrant, charging him with the offense of an attempt to commit larceny, and upon that he was *194 finally discharged by the failure of the grand jury to find an indictment against him.
As to the first arrest, the evidence on the part of the plaintiff tended to establish the fact that it was without any reasonable or justifiable cause, but on the part of the -defense proof was given of the fact that he had committed •an assault upon another person, and that this assault was the cause of the arrest. Whether he committed the assault •or not, was a question, however, which the court was not at liberty to decide, for the evidence concerning its commission was decidedly in conflict, that on the part of the plaintiff denying it, while that on behalf of the defendants .asserting it. This conflict of evidence could only be regularly and legally settled by submitting the case to the jury. .If they should determine that the plaintiff was right in Ms statements, then there was no ground for the arrest, or the prosecution, and the jury from that fact might have inferred the proceedings to have been malicious and • awarded the plamtiff damages accordmgly.
The second arrest was made at the corner of Bay and Clinton streets, in a village on Staten Island. At the time of that arrest, which was near the middle of the mght, the plamtiff appears to have been engaged in no uMawful act whatever, but he was arrested upon the apprehension that he probably mtended to go to the basin in wMch a steam yacht was located, wMch was the subject of controversy between the parties, and resume possession of her and remove her from the basin. But upon that mere suspicion, as the plamtiff was at the time engaged in the commission of no violation of the law, his arrest and detention was without any legal foundation. And as to that there was sufficient likewise to submit the case to the decision of the jury.
The third arrest was for an attempt to steal, take and ■carry away the same steam yacht called Eclipse. A contract had previously been entered into by the plamtiff for her sale, through the agency of one of the defendants, to W. M. Smith, for the price of $1,150. By the agreement which was made, the plaintiff undertook to deliver her in accordance with the description contamed m a preceding instrument, at any point in the harbor of New York, designated by the defendant Maiming, in running order. It was further agreed that the purchase money should be ready for payment on or before the 31st of March, 1884, and that Smith should have the refusal of the boat up to that time, and that payment for her was to be made on ■ delivery. The sum of $100 was paid upon the agreement by the defendant Mamiing at one time, and $500 at another, -and the boat was taken by the plaintiff to what was called *195 the Seawanaka Basin, where she remained to, and including, the times in controversy in this action. The plaintiff ■demanded the residue of the purchase price, and gave evidence tending to show her condition and machinery to be as that was required to fulfil the terms of the sale.
This was not paid, but a further examination of the boiler ■of the yacht was insisted upon to ascertain whether it was in the condition in which the purchaser was entitled to have it for the completion of the purchase. This examination was not made, neither was the payment made, and the plaintiff accordingly claimed the right to repossess himself •of the yacht, which was denied by the defendants, unless he refunded the moneys so paid to him upon the purchase price. That he did not do, but refused on account of expenditures he had been subjected to in the meantime concerning the property. His evidence tended to show that no delivery of the yacht had been made under the agreement for her sale, and that given on behalf of the defendants clearly indicated that no acceptance of her had taken place on behalf of the purchaser, or his agent. And if there had been neither a delivery nor acceptance, then the title remained in the plaintiff, subject to the completion of the contract by payment of the balance of the purchase price. And by force of that title he was authorized to retain possession until the completion of the agreement by the acceptance of the property and the payment of the residue of the purchase price. The larceny with which he was charged was an attempt to take possession of the yacht and remove her from the basin, and that charge under these facts seems to have been without colorable foundation. For, as the plaintiff was entitled to the full payment ■of the purchase price before the purchaser, or his agent, could claim or take possession of the property, and the evidence tended to establish the fact that there had been no delivery of it, and certainly no acceptance by the purchaser, or his agent, the plaintiff did seem to be entitled to take charge of and retain the property until the purchaser was ready to complete the agreement of sale. The case surely was in the condition upon the evidence in which the jury may very well have found these facts in favor of the plaintiff, and if they should, then no legal reason existed for charging the plaintiff with an attempt to ■steal the yacht when he endeavored to assume possession of her. It is true that this was done in the night time, when it was expected that the attempt would not be interrupted by any action on the part of the defendants, but that was no more than a circumstance for the jury to consider bearing upon the legal theory on which the plaintiff’s case depended.
*196 lt was not controlling inasmuch as the other facts still remained, from which the jury might infer that the title to the yacht was in the plaintiff, and as the terms of the contract had not been performed, he could in that event, resume actual possession and control. And with those: facts found in the plaintiff’s favor, there was no reasonable* or probable ground upon which he could be charged with, the crime of an attempt to steal by endeavoring to resume* the control and possession of the property, as long as it was not at the time in the actual custody or control of any other person. Upon this part of the case the evidence was* such as to require that it should be submitted to the jury, for if they should-find that this arrest and prosecution or. the plaintiff was without reasonable or probable cause, and. maliciously made, he would be entitled to recover the* damages thereby sustained by him.
The case was not one to be disposed of by the direction of the court. It was error for the court to hold as a matter of law that the evidence was sufficient to show probable cause,, and the exception taken to that decision was well founded. • The judgment should be reversed and a new trial ordered,, with costs to abide the event.
I concur, Brady, J.